1  Kent Olson
   3510 E. Hampton Ave. #34
2  Mesa, AZ 85204
   (480) 375-1729
3  Plaintiff, appearing Pro Se

___ FILED      ___ LODGED
___ RECEIVED   ___ COPY

OCT 1 4 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ B DEPUTY

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8  Kent Olson,                          | Case No.: _____

9              Plaintiff,               **CV-14-02275-PHX-GMS**

10 vs.                                  **COMPLAINT AND**
                                        **DEMAND FOR JURY TRIAL**
11 Pfizer, Inc.; Pharmacia and Upjohn
   Company, L.L.C.; Endo Pharmaceuticals,
12 Inc.; Actavis, Inc.; Watson
   Pharmaceuticals, Inc.; Hikma
13 Pharmaceuticals PLC; West-Ward
   Pharmaceutical Corp.; and John Doe,
14
              Defendant.

15                        **COMPLAINT FOR DAMAGES**

16
       Plaintiff, Kent Olson, hereby alleges against Pfizer, Inc. ("Brand Defendants"),
17
   Pharmacia and UpJohn Company, L.L.C. ("Brand Defendants"), Endo
18
   Pharmaceuticals, Inc. ("Brand Defendants"), Actavis, Inc. ("Generic Defendants"),
19
   Watson Pharmaceuticals, Inc. ("Generic Defendants"), West-Ward Pharmaceutical
20
   Corp. ("Generic Defendants"), and John Doe (1) ("Generic Defendants") the
21
   following:

                                      1

**INTRODUCTION**

1.      This case involves the generic prescription drug testosterone enanthate, which is manufactured, sold, distributed and promoted by Generic Defendants as a testosterone replacement therapy.

2.      This case additionally involves the generic prescription drug testosterone cypionate, which is manufactured, sold, distributed and promoted by Generic Defendants as a testosterone replacement therapy.

3.      This case additionally involves the branded prescription drug Delatestryl, which is manufactured, sold, distributed and promoted by Endo Pharmaceuticals, Inc. as a testosterone replacement therapy.

4.      This case additionally involves the branded prescription drug Depo-Testosterone, which is manufactured, sold, distributed and promoted by Pfizer, Inc. and Pharmacia & Upjohn Company as a testosterone replacement therapy.

5.      Defendants misrepresented that Delatestryl, Depo-testosterone, testosterone cypionate and testosterone enanthate is a safe and effective treatment for hypogonadism or "low testosterone," when in fact the drug causes serious medical problems, including life-threatening cardiac events, strokes, and thrombolytic events.

6.      Defendants engaged in aggressive, award-winning direct-to-consumer and physician marketing and advertising campaigns for testosterone replacement therapy.  Further, Defendants engaged in an aggressive unbranded "disease

2

awareness" campaign to alert men that they might be suffering from low testosterone, or "low T," levels.

7. As a result, diagnoses of low testosterone have increased exponentially. This has directly related to skyrocketing sales of testosterone cypionate, testosterone enanthate, Delatestryl, and Depo-Testosterone.

8. However, consumers of testosterone such as Plaintiff were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, and thrombolytic events.

## PARTIES

9. Plaintiff is an individual who is a resident and citizen of Mesa in Maricopa County, State of Arizona.

10. Defendant Pfizer, Inc. ("Pfizer"), the manufacturer of Depo-Testosterone, is a corporation organized and existing under the laws of Delaware with its principal place of business at 235 East 42nd Street, New York, New York 10017. At all times relevant, Defendant Pfizer, Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, including but not limited to the State of Arizona, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy Depo-Testosterone.

3

11.     Defendant Pharmacia and Upjohn Company, L.L.C. ("Pharmacia"), is a corporation organized and existing under the laws of Delaware with its primary place of business at 235 East 42nd Street, New York, New York 10017. At all times relevant, Defendant Pharmacia and Upjohn, L.L.C. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, including but not limited to the State of Arizona, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy Depo-Testosterone.

12.     Defendant Endo Pharmaceutical, Inc. ("Endo"), is a corporation organized and existing under the laws of Delaware with its principal place of business at 1400 Atwater Drive, Malvern, Pennsylvania 19355. At all times relevant, Defendant Endo Pharmaceuticals, Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, including but not limited to the State of Arizona, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy Delatestryl.

13.     Defendant Actavis, Inc. ("Actavis") is and at all times relevant was, a corporation organized and existing under the laws of the State of New Jersey, have a principal place of business at 400 Interpace Parkway, Parsippany, New

4

Jersey 07054. At all times relevant, Defendant Actavis, Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, including but not limited to the State of Arizona, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy testosterone cypionate and testosterone enanthate.

14. Defendant Watson Pharmaceuticals, Inc. ("Watson") is and at all times relevant was, a corporation organized and existing under the laws of the State of New Jersey, have a principal place of business at 400 Interpace Parkway, Parsippany, New Jersey 07054. At all times relevant, Defendant Watson Pharmaceuticals, Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, including but not limited to the State of Arizona, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy testosterone cypionate and testosterone enanthate.

15. Defendant Hikma Pharmaceuticals PLC ("Hikma") is and at all times relevant was, a corporation incorporated in the United Kingdom with a place of business at 13 Hanover Square, London, W1S 1HW, United Kingdom. At all times relevant, Defendant Hikma was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or

5

1    introducing into interstate commerce throughout the United States, including

2    but not limited to the State of Arizona, either directly or indirectly through

3    third parties, subsidiaries or related entities, the testosterone therapy

4    testosterone cypionate and testosterone enanthate. According to Hikma's

5    website, Hikma's generics business in the United States "operates as West-

6    Ward Pharmaceuticals, a domestic marketer and manufacturer of generic

7    pharmaceuticals products."

8  16.  Defendant West-Ward Pharmaceutical Corp. ("West-Ward") is and at all times

9    relevant was, a corporation organized and existing under the laws of the State

10    of Delaware, have a principal place of business at 401 Industrial Way West,

11    Eatontown, New Jersey 07724. At all times relevant, Defendant West-Ward

12    was engaged in the business of developing, designing, licensing,

13    manufacturing, distributing, selling, marketing, and/or introducing into

14    interstate commerce throughout the United States, including but not limited to

15    the State of Arizona, either directly or indirectly through third parties,

16    subsidiaries or related entities, the testosterone therapy testosterone cypionate

17    and testosterone enanthate. West-Ward's website states that it is "the US agent

18    and subsidiary of Hikma PLC." West-Ward's website also indicates that it has

19    a sales representative for the State of Delaware.

20  17.  Upon information and belief Defendant **John Doe** is and at all times relevant

21    was not a resident of the State of Arizona and is and was engaged in the

6

business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, including but not limited to the State of Arizona, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy testosterone cypionate and testosterone enanthate .

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000.00 exclusive of interest and costs. There is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff is a citizen of Arizona. Endo is a citizen of the states of Delaware and Pennsylvania. Pfizer and Pharmacia are citizens of the states of Delaware and New York. Actavis and Watson are a citizens of the state of New Jersey. West-Ward is a citizen of the states of Delaware and New Jersey. are citizens of the state of Hikma is a citizen of the United Kingdom. Upon information and belief, John Doe is not a citizen of the state of Arizona.

19. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. §1367.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), as Plaintiff resided in the State of Arizona and within this Federal District.

21. Plaintiff's case may be subject to transfer to the Testosterone Replacement

7

Therapy Products Liability litigation, MDL 2545, in the United State District Court for the Northern District of Illinois. Plaintiff does not waive any jurisdictional rights including, but not limited to, those recognized in *Lexecon, Inc. v. Milberg, Weiss, Berchad, Hynes & Lerach*, 523 US 26 (1998).

## GENERAL ALLEGATIONS

22. This is an action for damages suffered by Plaintiff, KENT OLSON who used the testosterone therapy testosterone enanthate and testosterone cypionate.

23. Plaintiff files this action within the applicable limitations period based on the date of Plaintiff's injuries.

24. At all times relevant, Defendants were engaged in the business of innovating, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy, Delatestryl, Depo-Testosterone, testosterone cypionate, and testosterone enanthate, for use and application by consumers such as Plaintiff.

25. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

8

26.    At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## OVERVIEW

27.    Delatestryl is Endo's trade name for their testosterone injection. Delatestryl was approved by The Food and Drug Administration (FDA) in December 1953.

28.    Delatestryl is a form of testosterone replacement therapy, indicated for the treatment and prevention of low testosterone levels caused by hypogonadism.

29.    Testosterone enanthate is the generic name of Delatestryl. Prescription medicines identified as testosterone enanthate contain the same active ingredient as Delatestryl, and they are equivalent to the brand name Delatestryl products in dosage, strength, and all other therapeutically material respects, including potentially beneficial effects and potentially harmful side effects. They differ from brand name Delatestryl only in therapeutically non-relevant respects such as inactive ingredients and source of manufacture.

9

30. Testosterone enanthate is an FDA approved testosterone supplement and a form of testosterone replacement therapy, indicated for the treatment and prevention of low testosterone levels caused by hypogonadism.

31. Depo-Testosterone is Pfizer and Pharmacia's trade name for their testosterone injection. Depo-Testosterone was approved by the FDA in July 1979.

32. Depo-Testosterone is a form of testosterone replacement therapy, indicated for the treatment and prevention of low testosterone levels caused by hypogonadism.

33. Testosterone cypionate is the generic name of Depo-Testosterone. Prescription medicines identified as testosterone cypionate contain the same active ingredient as Depo-Testosterone, and they are equivalent to the brand name Depo-Testosterone products in dosage, strength, and all other therapeutically material respects, including potentially beneficial effects and potentially harmful side effects. They differ from brand name Depo-Testosterone only in therapeutically non-relevant respects such as inactive ingredients and source of manufacture.

34. Testosterone cypionate is an FDA approved testosterone supplement and a form of testosterone replacement therapy, indicated for the treatment and prevention of low testosterone levels caused by hypogonadism.

35. Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

10

36. In men, testosterone levels normally begin a gradual decline after the age of thirty.

37. The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day and medication. As a result, many men who fall into the hypogonadal range on one day will have normal testosterone levels on the following day.

38. Defendants and other pharmaceutical companies involved in testosterone replacement therapy engaged in aggressive direct-to-consumer and physician marketing and advertising campaigns promoting these therapies, as well as an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from low testosterone, or "Low-T," levels. These marketing campaigns included television advertisements, promotional literature distributed to healthcare providers' offices and potential testosterone injection users, and online media campaigns. Defendants and other unnamed pharmaceutical companies also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed. Defendants and other unnamed pharmaceutical companies involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively spent tens of millions of dollars promoting testosterone replacement therapy.

11

39.    Brand Defendants had actual and/or constructive knowledge that generic drug manufacturers also typically rely upon the marketing efforts of the drug innovators and brand manufacturers to generate sales of generic products.

40.    These marketing programs sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that testosterone replacement products like Delatestryl, Depo-testosterone, testosterone cypionate and testosterone enanthate are safe for human use, even though Defendants knew these statements to be false, and even though Defendants had no reasonable grounds to believe them to be true.

41.    These marketing campaigns have been enormously successful, convincing millions of men and their physicians that they need testosterone replacement therapy. In 1999, pharmaceutical companies involved in testosterone replacement therapy estimated that hypogonadism affected approximately "one million American men." In 2000, the market for testosterone therapy had grown to "four to five million American men." Three years later, in 2003, the market had increased to "up to 20 million men." According to Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?*. Bloomberg BusinessWeek, May 10, 2012, estimates indicate that sales of testosterone therapies are expected to triple in the next few years, bringing in over $5 billion by the year 2017.

12

42.  According to a study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

43.  Most experts would agree that symptoms such as fatigue, increased body fat, or moodiness—symptoms that Defendants and other companies involved in marketing testosterone therapies often attribute to low testosterone levels—can be caused by an abundance of factors, the most prominent of which is the natural aging process. However, as a result of Defendants' "disease mongering," as termed by Dr. Adriane Fugh-Berman of Georgetown University Medical Center, the number of individuals diagnosed with low testosterone has increased exponentially.

44.  A number of scientific studies have produced results that suggest that testosterone therapy can increase the risk of cardiac events, strokes, and thrombolytic events.

45.  In 2010, a New England Journal of Medicine Study, "Adverse Events Associated with "Testosterone Administration," was stopped after an alarmingly high number of participants suffered serious adverse events.

13

46.  In November of 2013, the results of a JAMA study titled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" were released. The JAMA study indicated that testosterone therapy raised the risk of death, heart attack and stroke by approximately 30%.

47.  On January 29, 2014, a study was released in PLOS ONE titled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men," which indicated that testosterone use doubled the risk of heart attacks in men over sixty five years old and men younger than sixty five with a previous diagnosis of heart disease.

48.  As innovators, manufactures, developers, distributors, holders of the FDA required permits and sellers of prescription drug products, specifically Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, the Defendants have a duty to adequately communicate warnings to physicians and the medical community (or patients who could be expected to take Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate), to exercise due care to conduct safety surveillance for Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, to ensure that the required warnings are accurate and adequate, and to ensure that these warnings are effectively communicated to physicians, pharmacists, and

14

1     patients using Delatestryl, Depo-Testosterone, testosterone cypionate and

2     testosterone enanthate.

3  49.    Defendants also have a post-sale duty to warn the medical, pharmaceutical and

4     scientific communities, and users and consumers of the drug, including

5     Plaintiff, of the potential risks and serious side effects associated with the use

6     of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

7     enanthate in a timely manner.

8  50.    At all relevant times alleged herein, Defendants were under a duty to disclose

9     to Plaintiff, Plaintiffs prescribing physicians and healthcare providers, the

10    medical, scientific, pharmaceutical and healthcare communities, the FDA, and

11    the public in general, the defective nature of Delatestryl, Depo-Testosterone,

12    testosterone cypionate and testosterone enanthate.

13  51.   At all relevant times, Defendants knew, or should have known through the

14    exercise of reasonable care, that the package insert for Depo-Testosterone,

15    Delatestryl, testosterone cypionate and testosterone enanthate substantially

16    understated the side effects of the drug.

17  52.   Pfizer, Pharmacia and Endo had actual and/or constructive knowledge that

18    generic drug manufacturers copy verbatim the package insert for the name

19    brand prescription drug product, which gives the impression to prescribers and

20    consumers that the information in the package inserts accompanying generic

21    prescription drugs is accurate and not misleading.

15

53.     Before the Plaintiff used the drug, Hikma and West-Ward, as well as the other generic manufacturers, submitted an Abbreviated New Drug Application ("ANDA") to the FDA, based on representations made by Pfizer, Pharmacia and Endo (as the Referenced Listed Drug Company), requesting permission to manufacture, market, and distribute testosterone cypionate and testosterone enanthate. The ANDAs were approved.

54.     Under the ANDA process, the Code of Federal Regulations required Hikma and West-Ward, as well as the other generic manufacturers, to submit a label for testosterone cypionate and testosterone enanthate initially identical in all material aspects to the reference listed drug label.

55.     Defendants had sole access to material facts concerning the defective nature of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate and its propensity to cause serious and dangerous side effects, and hence, cause damage to consumers, including Plaintiff.

56.     In representations to Plaintiff, Plaintiffs prescribing physicians and healthcare providers the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general, Defendants made misrepresentations and actively concealed information concerning the safety and efficacy of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate in their labeling, advertising, product inserts, promotional material or other marketing efforts.

16

57.   Defendants fraudulently concealed and intentionally omitted the following material information from Plaintiff, prescribing physicians, healthcare providers, the FDA, consumers, and the general public:

a.   That Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate is unsafe and dangerous to users;

b.   That the risk of adverse events with Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was higher than represented;

c.   That Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was not adequately tested by Defendants;

d.   That users were put at risk of experiencing serious and dangerous side effects including, but not limited to cardiac events, strokes, and thrombolytic events, as well as other severe and personal injuries, physical pain, and mental anguish;

e.   That patients needed to be monitored more regularly than normal while using Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate; and

f.   That Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

17

58.   The many misrepresentations and active concealment by Defendants were perpetuated directly and indirectly by Defendants; their sales representative, employees, distributors, agents and detail persons.

59.   Defendants made the misrepresentations and actively concealed information concerning the safety and efficacy of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate with the intention and specific desire that the medical, pharmaceutical and scientific communities, and consumers, including Plaintiff, and his prescribing physicians and healthcare providers, would rely on such in selecting Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate.

60.   Defendants knew that Plaintiff, physicians, pharmacists, the medical community in general, and others similarly situated relied on Defendants to disclose and communicate to doctors what they knew and what experts in the use and effects of the drug would know from a prudent review of the information that they possessed or were reasonably able to obtain.

61.   Defendants knew that Plaintiff, his prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general had no way to determine the truth behind Defendants' concealment and omissions.

62.   At all times material hereto, the Defendants knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness

18

of the risks associated with use of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate. Defendants also knew or should have known that the monographs for Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate were deficient, inaccurate, false, and misleading in communicating to the medical community in general, to physicians, or to the public, information about the risks associated with the drug.

63.    Defendants knew or, through the exercise of reasonable care, should have known that the labeling for Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate substantially understated the risks, overstated the efficacy of the drug, and included material omissions of facts surrounding Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, as set forth herein. They failed to use reasonable care to ascertain or communicate to physicians or to the public information that would constitute adequate and effective warnings to physicians or to the public about the true risks of the drug and the effects of long-term use.

64.    Pfizer, Pharmacia and Endo had actual and/or constructive knowledge that physicians would rely upon the information they disseminated to them, regardless of whether the prescriptions written by the physicians might be filled with the brand products Depo-Testosterone or Delatestryl, or with the generics testosterone cypionate or testosterone enanthate, and that many

19

1        patients, in accordance with those prescriptions, would be likely to use the

2        generics testosterone cypionate or testosterone enanthate.

3  65.     Defendants were aware that their individual and collective failure to

4        communicate to the medical community and to physicians information known

5        to them about the risks of testosterone therapy would likely result in serious

6        injury to patients who received the drug via prescriptions issued by physicians

7        who were unaware of this information. By failing to communicate this

8        information to the medical community or the FDA, the Defendants acted in

9        willful and wanton disregard of Plaintiff and others similarly situated to

10       Plaintiff, and this conduct caused serious injury to Plaintiff.

11  66.    As a result of the Defendants' advertising and marketing efforts and

12       representations, Delatestryl, Depo-Testosterone, testosterone cypionate and

13       testosterone enanthate was and continues to be pervasively prescribed and used

14       throughout the United States.

15  67.    During the time that Delatestryl, Depo-Testosterone, testosterone cypionate

16       and testosterone enanthate has been sold in the United States, many reports of

17       injury and death associated with Delatestryl, Depo-Testosterone, testosterone

18       cypionate and testosterone enanthate have been submitted to the FDA.

19  68.    Defendants breached their duty to ensure that adequate warnings were

20       provided to the medical community, Plaintiff's physicians, Plaintiff, and/or

21

20

other foreseeable Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate users similarly situated, by failing to:

a.    Ensure that Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate warnings to the medical community, physicians, and Plaintiff's physician were accurate and adequate.

b.    Ensure that Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate warnings were effectively communicated to the medical community, physicians and Plaintiff;

c.    Conduct post market safety surveillance and report that information to the FDA, the medical community, Plaintiff's physicians, Plaintiff and other foreseeable users;

d.    Review all adverse drug event ("ADE") information, and to report information bearing significantly upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate to the FDA, medical community, Plaintiff's physicians, Plaintiff and other foreseeable users;

e.    Periodically review all medical literature regarding Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate and report to the FDA, the medical community, or other interested individuals significant data concerning the efficacy or safety of

21

1    Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

2    enanthate;

3    f.    Independently monitor the sales of Delatestryl, Depo-Testosterone,

4          testosterone cypionate and testosterone enanthate and the medical

5          literature, which would have alerted them to the fact that Delatestryl,

6          Depo-Testosterone, testosterone cypionate and testosterone enanthate

7          was widely over prescribed, owing to the inadequate warnings provided

8          to doctors;

9    g.    Engage in responsible testing, research, and pharmacovigilance

10         practices regarding Delatestryl, Depo-Testosterone, testosterone

11         cypionate and testosterone enanthate, including properly performing

12         studies to accurately determine the risks attendant to both short and

13         long-term Delatestryl, Depo-Testosterone, testosterone cypionate and

14         testosterone enanthate use, and properly engaging in marketing practices

15         designed to minimize the risks associated with Delatestryl, Depo-

16         Testosterone, testosterone cypionate and testosterone enanthate.

17                           **CASE-SPECIFIC ALLEGATIONS**

18   69.   Plaintiff, KENT OLSON, was born on July, 24, 1949.

19   70.   As a result of Defendants' claims regarding the effectiveness and safety of

20         Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

21         enanthate, Plaintiff was prescribed and used testosterone enanthate between

                                          22

July 13, 2009 and October 1, 2012. Plaintiff was prescribed and used testosterone cypionate between October 1, 2012 and June 25, 2014. During this time, Plaintiff received his injection from his physician every few weeks.

71.    Plaintiff used testosterone cypionate and testosterone enanthate as prescribed, as directed, and in a reasonably foreseeable manner.

72.    Plaintiff used testosterone cypionate and testosterone enanthate that had been provided to him in a condition that was substantially the same as the condition in which it was manufactured and sold.

73.    On or about October 19, 2012, as a direct and proximate result of using testosterone cypionate and testosterone enanthate, Plaintiff suffered from the injuries and damages alleged herein, including a stroke requiring hospitalization, continuing treatment and medical monitoring.

74.    Plaintiff, as a direct and proximate result of using testosterone cypionate and testosterone enanthate, suffered severe mental and physical pain and suffering and has sustained permanent injuries, emotional distress and diminished enjoyment of life.

75.    Plaintiff would not have used testosterone cypionate and testosterone enanthate had Defendants properly disclosed the risks associated with the drug.

76.    The acts, conduct, and omissions of Defendants, and each of them, as alleged throughout this Complaint were fraudulent, willful, and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of

23

Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, and for the primary purpose of increasing Defendants' profits from the sale and distribution of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against each Defendant in an amount appropriate to punish and make an example of each Defendant.

77.    Prior to the manufacturing, sale and distribution of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, Defendants, and each of them, knew that Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was in a defective condition and previously described herein and knew that those who were prescribed Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants and each of them through their officers, directors, managers, and agents, had knowledge that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and as such, consumers of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate were unreasonably subjected to risk of injury or death.

24

78. Despite such knowledge, Defendants, and each of them, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate and failed to warn the public, including Plaintiff, prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general, of the extreme risk of injury occasioned by said defects inherent in Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate. Defendants and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution and marketing of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate knowing that the public, including Plaintiff would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

79. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for safety.

80. The acts, conduct, and omissions of Defendants, and each of them, as alleged throughout this Complaint were fraudulent, willful, and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of

25

1    Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

2    enanthate, and for the primary purpose of increasing Defendants' profits from

3    the sale and distribution of Delatestryl, Depo-Testosterone, testosterone

4    cypionate and testosterone enanthate. Defendants' outrageous and

5    unconscionable conduct warrants an award of exemplary and punitive damages

6    against each Defendant in an amount appropriate to punish and make an

7    example of each Defendant.

8    **CAUSES OF ACTION**

9    **COUNT I**

10    **STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT**

11    81.   Plaintiff hereby restates and realleges each and every allegation set forth

12    above, with the same force and effect as if fully set forth herein.

13    82.   Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

14    enanthate was designed, manufactured, marketed, promoted, sold, and

15    introduced into the stream of commerce by Defendants.

16    83.   When it left the control of Defendants, Delatestryl, Depo-Testosterone,

17    testosterone cypionate and testosterone enanthate was expected to, and did

18    reach Plaintiff without substantial change from the condition in which it left

19    Defendants' control.

20    84.   Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

21    enanthate was inherently defective and unreasonably dangerous when it left

26

Defendants' control and was placed into the stream of commerce, in that there were foreseeable risks that exceeded the benefits of the products and/or that it deviated from product specifications and/or applicable federal requirements, and posed a risk of serious injury and death.

85. Specifically, Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was more likely to cause heart attacks, strokes, and the development of deep vein thrombosis and/or pulmonary embolism, and death than other similar medications.

86. Plaintiff used testosterone cypionate and testosterone enanthate in substantially the same condition it was in when it left control of Defendants and any change or modifications were foreseeable by Defendants.

87. Plaintiff and his healthcare providers did not misuse or materially alter the testosterone cypionate and testosterone enanthate.

88. As a direct and proximate result of Plaintiffs use of testosterone cypionate and testosterone enanthate, he suffered serious physical injury, harm, damages and will continue to suffer harm and damages in the future.

89. Defendants are strictly liable to Plaintiff for designing, creating, manufacturing, distributing, selling, and placing Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate into the stream of commerce, and for all damages caused to Plaintiff by his use of testosterone

27

1    cypionate and testosterone enanthate because the product was inherently

2    defective and unreasonably dangerous.

3 90.    Defendants' actions and omissions as alleged in this Complaint constitute a

4    flagrant disregard for human life, so as to warrant to imposition of punitive

5    damages.

6 WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive

7 damages, in addition to all costs, interests and fees, including attorneys' fees, to which

8 he is entitled under law and such other relief as this Honorable Court deems

9 appropriate.

10                            **COUNT II**

11           **STRICT PRODUCT LIABILITY - DESIGN DEFECT**

12 91.    Plaintiff incorporates each paragraph of this Complaint as if set forth fully

13    herein and further alleges as follows.

14 92.    Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

15    enanthate was not merchantable and/or reasonably suited to the use intended,

16    and its condition when sold was the proximate cause of the injuries sustained

17    by Plaintiff.

18 93.    Defendants placed Delatestryl, Depo-Testosterone, testosterone cypionate and

19    testosterone enanthate into the stream of commerce with wanton and reckless

20    disregard for the public safety.

21 94.    Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

28

enanthate was defective in design in that, when it left Defendants' control, the foreseeable risks of the product exceeded the benefits associated with its design, and it was more dangerous than an ordinary consumer or ordinary healthcare provider would expect.

95. The foreseeable risks associated with Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate's designs include the fact that its design is more dangerous than a reasonably prudent consumer or healthcare provider would expect when used in an intended or reasonably foreseeable manner.

96. Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was unsafe, defective, and inherently dangerous, which was unreasonably dangerous to its users and in particular, Plaintiff.

97. Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was in defective conditions and unsafe, and Defendants knew, had reason to know, or should have known that Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was defective and unsafe, even when used as instructed.

98. The nature and magnitude of the risk of harm associated with the design of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, including the risk of suffering a heart attack, stroke, developing a deep vein thrombosis and pulmonary embolism, and death, is high in light of

29

the intended and reasonably foreseeable use of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate.

99. The risk of harm associated with the design of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate is higher than necessary.

100. It is highly unlikely that Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate users would be aware of the risks associated with Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate through general knowledge or otherwise, and Plaintiff specifically was not aware of these risks.

101. The designs did not conform to any applicable public or private product standard that was in effect when Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate left the Defendants' control.

102. Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate's design is more dangerous than a reasonably prudent consumer would expect when used as intended or in a reasonably foreseeable manner as a form of testosterone replacement. The designs of the drugs were more dangerous than Plaintiff expected.

103. The intended or actual utility of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate is not of such benefit to justify the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

104. At the time Delatestryl, Depo-Testosterone, testosterone cypionate and

30

testosterone enanthate left Defendants' control, it was both technically and economically feasible to have alternative designs that would not cause heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death or alternative designs that would have substantially reduced the risks of these injuries.

105.   It was both technically and economically feasible to provide a safer alternative product that would have prevented the harm suffered by Plaintiff.

106.   The unreasonably dangerous nature of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate caused serious harm to Plaintiff.

107.   As a direct and proximate result of the Plaintiffs use of testosterone cypionate and testosterone enanthate, which was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants. Plaintiff suffered serious physical injury, harm and damages and will continue to suffer such harm and damages in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under the law and such other relief as this Honorable Court deems appropriate.

## COUNT III

## STRICT PRODUCT LIABILITY - FAILURE TO WARN

108.  Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

109.  Defendants had a duty to warn Plaintiff and his healthcare providers of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death associated with Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate.

110.  Defendants knew, or in the exercise of reasonable care should have known, about the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death associated with Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate.

111.  Defendants failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of stroke, deep vein thrombosis, pulmonary embolism and/or death, in light of the likelihood that then-products would cause these injuries.

112.  Defendants failed to update warnings based on information received from product surveillance after Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was first approved by the FDA and marketed, sold, and used in the United States and throughout the world.

113.  A manufacturer exercising reasonable care would have updated its warnings on the basis of reports of injuries to men using Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate after FDA approval.

32

114. When it left Defendants' control, Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate was defective and unreasonably dangerous for failing to warn of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

115. Plaintiff used testosterone cypionate and testosterone enanthate for its approved purpose and in a manner normally intended and reasonably foreseeable by the Defendants.

116. Plaintiff and Plaintiff's healthcare providers could not, by the exercise of reasonable care, have discovered the defects or perceived their danger because the risks were not open or obvious.

117. Defendants, as the manufacturers and distributors of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate are held to the level of knowledge of an expert in the field.

118. The warnings that were given by Defendants were not accurate or clear, and were false and ambiguous.

119. The warnings that were given by the Defendants failed to properly warn physicians of the risks associated with Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate, subjecting Plaintiff to risks that exceeded the benefits to the Plaintiff. Plaintiff, individually and through his physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

33

120. Defendants had a continuing duty to warn Plaintiff and his prescriber of the dangers associated with its product.

121. Had Plaintiff or his healthcare providers received adequate warnings regarding the risks associated with the use of testosterone cypionate and testosterone enanthate, he would not have used it.

122. As a direct and proximate result of the Plaintiffs use of testosterone cypionate and testosterone enanthate and Plaintiffs reliance on Defendants' representations regarding the character and quality of the product and Defendants' failure to comply with federal requirements, Plaintiff suffered serious physical injury, harm and damages and will continue to suffer such harm and damages in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief this Honorable Court deems appropriate.

## COUNT IV

## NEGLIGENCE

123. Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though set forth herein and further alleges as follows.

124. Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of Delatestryl, Depo-Testosterone,

34

testosterone cypionate and testosterone enanthate into the stream of commerce, including a duty to assure that their products did not pose an undue risk of bodily harm and adverse events, and to properly warn of all risks, and comply with federal requirements.

125. Defendants failed to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate into the stream of commerce in that Defendants knew or should have known that the products caused significant bodily harm and were not safe for use by consumers.

126. Specifically, Defendant failed to properly warn and thoroughly:

    a.    Test Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate before releasing it into the market;

    b.    Analyze the data resulting from the pre-marketing tests of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate;

    c.    Conduct sufficient post-marketing testing and surveillance of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate;

    d.    Provide appropriate warnings for consumers and healthcare providers including disclosure of the known or potential risks or true or suspected rates of heart attack, stroke, deep vein thrombosis, pulmonary embolism

35

1    and/or death.

2   127.  Despite the fact that Defendants knew or should have known that their

3         products posed a serious risk of bodily harm to consumers, Defendants

4         continued to manufacture and market Delatestryl, Depo-Testosterone,

5         testosterone cypionate and testosterone enanthate for use by consumers and

6         continued to fail to comply with federal requirements.

7   128.  It was foreseeable that Defendants' products, as designed, would cause serious

8         injury to consumers, including Plaintiff.

9   129.  As direct and proximate result of Defendants' negligence, Plaintiff suffered

10        serious physical injury, harm and damages and will continue to suffer such

11        harm and damages in the future.

12  130.  Defendants' conduct as described above, including but not limited to their

13        failure to adequately design, test, and manufacture, as well as their continued

14        marketing and distribution of Delatestryl, Depo-Testosterone, testosterone

15        cypionate and testosterone enanthate when they knew or should have known of

16        the serious health risks they created and the failure to comply with federal

17        requirements, evidences a flagrant disregard of human life so as to warrant the

18        imposition of punitive damages.

19  131.  Defendants' actions and omissions as alleged in this Complaint demonstrate a

20        flagrant disregard for human life, and willful and wanton conduct, which

21        warrants the imposition of punitive damages.

36

1   WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive

2   damages, in addition to all costs, interest and fees, including attorneys' fees, to which

3   he is entitled under law and such other relief as this Honorable Court deems

4   appropriate.

5                                   **COUNT V**

6                        **BREACH OF IMPLIED WARRANTY**

7   132.   Plaintiff incorporates by reference herein each of the allegations set forth in

8          this Complaint as though set forth herein and further alleges as follows.

9   133.   When Defendants designed, manufactured, marketed, sold and distributed

10         Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

11         enanthate for use by the Plaintiff, Defendants knew of the use for which it was

12         intended and impliedly warranted the product to be merchantable quality and

13         safe for such use and that its design, manufacture, labeling and marketing

14         complied with all applicable federal requirements.

15  134.   Plaintiff and his physicians reasonably relied upon the Defendants'

16         representations of the product's merchantable quality and that it was safe for its

17         intended use, and upon Defendants' implied warranty, including that they were

18         in compliance with all federal requirements.

19  135.   Contrary to such implied warranty, Delatestryl, Depo-Testosterone,

20         testosterone cypionate and testosterone enanthate was not of merchantable

21         quality or safe for their intended use, because the product was defective, as

                                        37

1    described herein, and it failed to comply with federal requirements.

2    136.    As a direct and proximate result of Defendants' breach of warranty, the

3          Plaintiff suffered serious physical injury, harm and damages and will continue

4          to suffer harm and damages in the future.

5    WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive

6    damages, in addition to all costs, interests and fees, including attorneys' fees, to which

7    he is entitled under law and such other relief as this Honorable Court deems

8    appropriate.

9                                **COUNT VI**

10                        **BREACH OF EXPRESS WARRANTY**

11   137.    Plaintiff incorporates by reference herein each of the allegations set forth in

12          this Complaint as though set forth herein and further alleges as follows.

13   138.    Defendants expressly warranted that Delatestryl, Depo-Testosterone,

14          testosterone cypionate and testosterone enanthate was safe and effective for the

15          treatment of low testosterone, and did not disclose the material risk that

16          Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

17          enanthate could cause heart attacks, strokes, deep vein thrombosis, pulmonary

18          embolism and/or death. The representations were not justified by the

19          performance of Delatestryl, Depo-Testosterone, testosterone cypionate and

20          testosterone enanthate. Members of the consuming public, such as Plaintiff,

21          and his healthcare providers, were intended third-party beneficiaries of the

                                        38

1    warranty.

2    139.   Plaintiff and his healthcare providers reasonably relied on these express

3    representations.

4    140.   The Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

5    enanthate manufactured and sold by the Defendants did not conform to these

6    express representations because they caused serious injury to Plaintiff when

7    used as recommended and directed, and these risks were not disclosed to

8    Plaintiff or his healthcare providers.

9    141.   As a direct and proximate result of Defendants' breach of warranty, the

10    Plaintiff suffered serious physical injury, harm and damages and will continue

11    to suffer harm and damages in the future.

12    WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive

13    damages, in addition to all costs, interests and fees, including attorneys' fees, to which

14    he is entitled under law and such other relief as this Honorable Court deems

15    appropriate.

16    **COUNT VII**

17    **<u>FRAUD</u>**

18    142.   Plaintiff incorporates by reference herein each of the allegations set forth in

19    this Complaint as though set forth herein and further alleges as follows.

20    143.   Defendants, from the time they first tested, studied, researched, evaluated,

21    endorsed, manufactured, marketed and distributed Delatestryl, Depo-

39

1  Testosterone, testosterone cypionate and testosterone enanthate and up to the

2  present, willfully deceived Plaintiff by concealing from him, Plaintiff's

3  physicians and the general public, the true facts concerning Delatestryl, Depo-

4  Testosterone, testosterone cypionate and testosterone enanthate and the disease

5  or condition of hypogonadism, which the Defendants had a duty to disclose.

6  144.  At all times herein mentioned, Defendants conducted a sales marketing

7  campaign to promote the sale of Delatestryl, Depo-Testosterone, testosterone

8  cypionate and testosterone enanthate and willfully deceive Plaintiff, Plaintiff's

9  physicians and the general public as to the benefits, health risks and

10  consequences of using Delatestryl, Depo-Testosterone, testosterone cypionate

11  and testosterone enanthate.  Defendants knew of the foregoing, that

12  Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

13  enanthate was not safe, fit and effective for human consumption, that using

14  Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

15  enanthate is hazardous to health, and that Delatestryl, Depo-Testosterone,

16  testosterone cypionate and testosterone enanthate has a serious propensity to

17  cause serious injuries to its users, including but not limited to the injuries

18  Plaintiff suffered.

19  145.  Defendants concealed and suppressed the true facts concerning Delatestryl,

20  Depo-Testosterone, testosterone cypionate and testosterone enanthate with the

21  intent to defraud Plaintiff, in that Defendants knew that Plaintiff's physicians

40

1     would not prescribe testosterone cypionate and testosterone enanthate, and

2     Plaintiff would not have used testosterone cypionate and testosterone

3     enanthate, if they were aware of the true facts concerning its dangers.

4 146.   As a result of Defendants' fraudulent and deceitful conduct, Plaintiff suffered

5     injuries and damages as alleged herein.

6 WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive

7 damages, in addition to all costs, interests and fees, including attorneys' fees, to which

8 he is entitled under law and such other relief as this Honorable Court deems

9 appropriate.

**COUNT VIII**

**NEGLIGENT MISREPRESENTATION**

12 147.   Plaintiff incorporates by reference herein each of the allegations set forth in

13     this Complaint as though set forth herein and further alleges as follows.

14 148.   From the time Delatestryl, Depo-Testosterone, testosterone cypionate and

15     testosterone enanthate were first tested, studied, researched, evaluated,

16     endorsed, manufactured, marketed and distributed, and up to the present,

17     Defendants made misrepresentations to Plaintiff, Plaintiff's physicians and the

18     general public, including but not limited to the misrepresentation that

19     Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone

20     enanthate was safe, fit and effective for human consumption. At all times

21     mentioned, Defendants conducted sales and marketing campaigns to promote

41

the sale of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate and negligently and recklessly deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the abovementioned product and the disease or condition of hypogonadism.

149. The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

150. The representations by the Defendants were in fact false, in that Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate is not safe, fit and effective for human consumption, using Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate is hazardous to health, and Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

151. The foregoing representations by Defendants, were made with the intention of inducing reliance and the prescription, purchase and use of Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate.

42

152.    In reliance of the misrepresentations by the Defendants, Plaintiff was induced to purchase and use Delatestryl, Depo-Testosterone, testosterone cypionate and testosterone enanthate.  If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used testosterone cypionate and testosterone enanthate.  The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

153.    As a result of the foregoing negligent and reckless misrepresentations by Defendants, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interests and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## PUNITIVE DAMAGE ALLEGATIONS

154.    Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though set forth herein.

155.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint were willful and malicious.  Defendants committed these acts with a conscious disregard for the rights of Plaintiff and other testosterone users and for the primary purpose of increasing Defendants' profits from the sale and

43

distribution of testosterone. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

156. Prior to the manufacturing, sale and distribution of testosterone, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental and emotional injuries. Further, Defendants, through their officers, directors, managers and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using testosterone.

157. Despite its knowledge, Defendants, acting through its officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in testosterone and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in testosterone. Defendants and their agents, officers and directors intentionally proceeded with the manufacturing, sale and distribution and marketing of testosterone knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest

44

1    and monetary profits.

2    158.    Defendants' conduct was despicable and so contemptible that it would be

3            looked down upon and despised by ordinary decent people, and was carried on

4            by Defendants with willful and conscious disregard for the safety of Plaintiff

5            and entitling Plaintiff to exemplary damages.

6

7                                    **RELIEF REQUESTED**

8

9    WHEREFORE, Plaintiff prays for judgment against Defendants and, as appropriate to

10   each cause of action alleged and as appropriate to the standing of Plaintiff, as follows:

11   1.      Past and future general damages, the exact amount of which has yet to be

12           ascertained, in an amount according to proof at the time of trial and which will

13           conform to proof at time of trial;

14   2.      Past and future economic and special damages according to proof at the time of

15           trial;

16   3.      Medical expenses, past and future, according to proof at the time of trial;

17   4.      Past and future pain and suffering damages, including mental and emotional

18           stress arising from Plaintiff's physical injuries, according to proof at the time

19           of trial;

20   5.      Equitable relief as requested and/or as the Court deems just and proper;

21

                                            45

6. Declaratory judgment that Defendants are liable to Plaintiff for all future evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses, costs and losses caused by Defendants' wrongdoing;

7. Medical monitoring, whether denominated as damages or in the form of equitable relief;

8. Punitive or exemplary damages according to proof at the time of trial;

9. Costs of suit incurred herein;

10. Pre-judgment interest as provided by law;

11. Such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, ~~by his undersigned counsel,~~ hereby demands a trial by jury on all counts in the Complaint and all issues so triable.

Respectfully submitted,

DATE: 10/10/14

KENT OLSON

3510 E. Hampton Ave. #34
Mesa, AZ 85304

Phone: (480) 375-1729

PRO SE

46